[Crim. No. 4323.   Second Dist., Div. One.   July 8, 1949.]

THE PEOPLE, Respondent, v. GILBERT JOSEPH
STINCHCOMB, Appellant.

Gilbert Joseph Stinchcomb, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Frank Richards,
Deputy Attorney General, for Respondent.

DRAPEAU, J.—The defendant was convicted of eight counts of violation of sections 288 and 288a of the Penal Code. He was also found to have suffered two prior felony convictions, one for stealing an automobile and the other 'for operating an automobile without the owner's consent. He was sentenced to the state penitentiary for the term prescribed by law as to each count, counts one and two to be served concurrently, the remaining six counts to be served consecutively. No appeal was taken from the judgments, which were dated October 20, 1947.

October 5, 1948, the defendant filed a number of documents in the superior court. The court treated these as a motion to set aside the judgments, a proceeding generally described in this state as a petition for a writ of error *coram nobis*. This petition was heard and denied October 11, 1948. Notice of appeal was filed October 25, 1948.

The documents filed on behalf of the defendant were prepared by him while confined in the state penitentiary and without the aid of counsel. It is evident that they were prepared by a person with little knowledge of the law or legal procedure.

We are first met with the suggestion by the attorney general that the appeal must be dismissed because the notice of appeal was not filed within 10 days after the date of the order denying the petition. It is argued that because of rule 31 of the Rules on Appeal this court is without jurisdiction to hear the appeal.

The order was made October 11, 1948, and the notice of appeal was filed October 25, 1948. Defendant states that the first notice he had of the ruling on his motion was October 20, 1948, whereupon he immediately mailed his notice of appeal, which was filed October 25, 1948.

Regarded as an entity, a motion in the nature of a writ of error *coram nobis* is a civil proceeding. For the purpose of furnishing a defendant with the record on appeal at the expense of the county, it has been said to be a part of the proceedings in a criminal case. (*In re Paiva*, 31 Cal.2d 503 [190 P.2d 604].) Unless the court can find some theory upon which to relieve the defendant from the time element in this case, rule 31, Rules on Appeal (22 Cal.2d 1, 22), is applicable, and the appeal must be dismissed. (*In re Horowitz*, 33 Cal. 2d 534 [203 P.2d 513].) We think this theory is to be found in *People* v. *Slobodion*, 30 Cal.2d 362 [181 P.2d 868], where it is held that if a defendant in the state penitentiary

has taken every step he possibly could to perfect his appeal he will not be deprived of the right of appeal because of the failure of someone in official position to forward a notice of appeal so that it might have been filed within the time required by the rules. Therefore, we will not dismiss the appeal.

This, then, brings us to a review of the entire case.

■ On August 19, 1947, an information was filed in the superior court charging the offenses and the priors already referred to. The defendant appeared with his counsel, the Public Defender of Los Angeles County, pleaded not guilty and denied the prior convictions. The case was called for trial and the defendant waived a jury.

In his briefs on appeal defendant repeatedly asserts that his right to a jury trial was waived by his attorney "against the request and demand for a jury trial by the defendant." The record does not support these charges, as the following colloquy between court, counsel, and defendant will show:

"MR. JOHNSON: One step at a time. I presume we should first waive the jury.

"MR. HARVEY: Defendant desires to waive trial by jury.

"THE COURT: Is that your desire?

"THE DEFENDANT: That's right.

"THE COURT: All right.

"MR. HARVEY: I join in the waiver.

"MR. JOHNSON: People join in that waiver."

Then the case for the People was submitted to the trial judge on the transcript of the testimony taken on the preliminary hearing, with the right of the defendant to testify himself and to present any other evidence relevant and pertinent to the case. In other words, upon stipulation of counsel for the People and the defendant, the trial judge read the transcript of the testimony of the witnesses at the preliminary examination and then continued with the further trial of the case.

The defendant complains of this procedure. But the stipulation was made in his presence and hearing in open court and he voiced no objection to it until he filed his pleadings and briefs in this proceeding.

This galloping administration of our criminal law is not to be commended. It leaves courts of review speculating as to what the decision of the trier of fact in a criminal case might have been had he listened to the testimony of the witnesses. It would have been better if the judge had looked

at the witnesses, and observed their demeanor on the stand. Their recollection could then have been tested by proper cross-examination, using their testimony upon the preliminary examination. And there could have been applied to their testimony other well-known rules for determining the credibility of witnesses.

In this case these observations are pertinent in considering the length of time this defendant will serve. Despite the necessity for celerity and dispatch in the trial of cases, it is to be remembered that it is the right of every defendant "to be confronted with the witnesses against him" (Pen. Code, § 686), and that this procedure in criminal trials may not be due process of law depending upon the circumstances of the case involved.

However, if a defendant may enter a plea of guilty to criminal charges, understanding what he is doing and represented by counsel, then surely, he may stipulate and consent to the submission of the People's case against him in this manner. The record in this case establishes that the defendant knew and understood what was going on. His attorney made the stipulation in his presence and he made no objection.

On the following day the case was resumed. The judge stated that he had read the transcript of testimony at the preliminary examination. The People presented evidence of the two prior convictions of the defendant and rested.

Evidently there was serious disagreement between the defendant and the public defender because the following occurred:

"MR. HARVEY: At this time, your Honor, may I make a statement to the Court about this case?

"THE COURT: Yes.

"MR. HARVEY: The defendant and his representation, meaning me and the investigating department of our office, have come into a very sharp and violent disagreement. The defendant is wholly dissatisfied with the efforts that have been put forth on his behalf by me and by the investigating department; and he has indicated to me he would like to have this case continued and have the Court appoint different counsel to represent him, because he feels he is not being given a fair trial in spite of the evidence I have been able to adduce in his behalf. I don't know whether there is any objection from the District Attorney, but the man is completely and wholly dissatisfied. Under those circumstances I would like that he be given the opportunity he feels may

be productive of his own good that he is not receiving from our office.

"Mr. Johnson: Your Honor, the People are opposed to a continuance. I may state—I don't think it is necessary—but I know the Public Defender and the investigator in the Public Defender's office have been putting in some time on this matter. I don't know what the defendant expects in the way of any assistance that he could get from any others. I doubt if he would get any greater assistance, knowing the way the Public Defender's office functions and particularly Mr. Harvey in handling the cases that he handles. I doubt if the defendant would receive any greater or more efficient or capable help from any attorney than he has received from Mr. Harvey and the Public Defender's office.

"There being no legal reason set forth for a continuance, at this time the People are opposed to any continuance.

"The Court: Well, now, Mr. Harvey, have you brought here any evidence—or all the evidence that is indicated to you by the defendant that he has or wants? Have you seen about getting those people here, if there are any?

"Mr. Harvey: Why, yes. The defendant seems to feel someone else could get witnesses which we have been unable to get.

"The Court: You have made an effort to get the witnesses he has indicated?

"Mr. Harvey: Yes, your Honor.

"The Court: And to bring before the Court all the evidence in his defense?

"Mr. Harvey: Yes, your Honor, I am advised by the investigating department they have. I didn't do it personally.

"The Court: The request of defendant is denied for a continuance and for other counsel."

Thereupon the defendant took the stand and categorically denied every offense with which he was charged. Decision was rendered then and there, convicting the defendant; and, upon his waiving time, the judgments were then and there pronounced.

This court has carefully gone over the briefs and the argument presented by the defendant; it has read and considered all of the pleadings and evidence in the case. A fair and impartial review of the entire matter has been made.

The defendant complains of having been incarcerated eight days before the trial and having been denied counsel during

that time. This, however, had nothing to do with the facts adduced upon the trial. (*People* v. *Lisenba,* 14 Cal.2d 403 [94 P.2d 569]; 314 U.S. 219 [62 S.Ct. 280, 86 L.Ed. 166].)

He complains of having been brought into the municipal court handcuffed, dirty, and unshaven, and paraded before the witnesses against him by a police officer who treated him ''as some people would treat a dog, only worse.'' This occurred in the courtroom of the presiding judge of the municipal court, not where the preliminary examination was held. The judge promptly ordered the handcuffs off and instructed the police officer as to his duty in that respect. It is difficult to see how this conduct could have influenced the trial judge in the superior court.

The defendant asserts that the transcripts of the proceedings in all of the courts which have heard his matters have been rigged and falsified by the reporters and attorneys for the People. These transcripts were made by official reporters, sworn to do their duty, and this court finds no evidence of any changing or falsification of the record.

The defendant complains of leading questions propounded to the witnesses. He says that counsel for the People dictated the testimony by ''head nods and head shakes'' at the witnesses. He makes the same charges as to the conduct of mothers of the boys as the boys were testifying. No complaints as to any of these matters was made by the defendant at any time until this proceeding was brought. Fortunately for the record in this case, the defendant was represented on the preliminary examination by able counsel. Cross-examination of the witnesses was proper and to the point and demonstrated an understanding by defendant's counsel of the effect of the testimony and the nature of the case. No objections were made to leading questions, and no representations were made to the judge of the municipal court respecting the other matters defendant alleges occurred.

Defendant's supplemental brief was evidently prepared after the receipt by him of the reporters' transcripts of the proceedings; for in that brief, he goes into an analysis of the testimony of each of the witnesses against him.

He charges that each witness was in the courtroom on the preliminary examination and heard the others testify, and that the testimony of one influenced the testimony of the others. While this perhaps may be true, no request was made of the court to exclude witnesses, and, as stated, the defendant was represented by able counsel.

The defendant asserts that every witness against him was and is untruthful, that they are all "neurotic liars," and that the officers told every one of them what to say. There are two answers to this major contention of the defendant: First, the weight, value, and effect of the evidence was passed upon by the trial judge who heard it. The writ of error *coram nobis* does not lie to correct an issue of fact which has been adjudicated, even if wrongly determined. (*In re Lindley,* 29 Cal.2d 709 [177 P.2d 918].) Secondly, the above case holds that the writ does not lie for alleged false testimony at the trial.

In view of the severity of the sentences pronounced by the trial court, of the difficulty in presenting his case with which the defendant has had to labor, we have given the entire record a most careful review and consideration. The testimony of the complaining witnesses is convincing, notwithstanding discrepancies and weaknesses brought out on cross-examination. They were all youngsters of tender age, and it will serve no useful purpose here to recite the revolting nature of the conduct of the defendant testified to by each of them.

The finding of the defendant's guilt is supported by ample and substantial testimony. He is guilty to a moral certainty and beyond a reasonable doubt. If there had been an appeal on the merits of the case, the judgments would have been affirmed on the record. Nor do we criticize the severity of the penalties adjudged. In order that youth may be protected from corruption, society requires that men like this defendant be sequestered and kept apart from any possible contact with children for the longest possible time. There is nothing in the record which would warrant the granting of an order in the nature of a writ of *coram nobis* setting aside the judgments.

The order is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 4, 1949.