[Crim. No. 3592.    First Dist., Div. One.    Nov. 5, 1959.]

THE PEOPLE, Respondent, v. JOHN T. DAILEY, Appellant.

Alden H. McClelland, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

BRAY, P. J.—Defendant appeals from conviction by the court, jury trial having been waived, of violation of section 217, Penal Code (assault with intent to commit murder).

## Questions Presented

1. Was there a constructive filing of the notice of appeal within the prescribed time?

2. Did the court abuse its discretion in denying defendant's motion for a second sanity hearing?

### 1. *Notice of Appeal.*

Rule 31 (a), Rules on Appeal, requires that notice of appeal in a criminal case (with certain exceptions not applicable here) be filed with the clerk of the superior court "within 10 days after the rendition of the judgment . . ." The judgment was rendered September 5, 1958, and defendant was sentenced to the state prison. Defendant's notice of appeal was received by mail and filed September 16 in the clerk's office. It is dated September 15 and the envelope in which it was mailed is postmarked Vacaville, September 15. September 15 was a Monday and under rule 31 (a) was the last day for the appeal to be filed with the clerk. It was not received by the clerk until the next day. While there is no evidence of when it was presented to the prison authorities, it could have been presented no later than the day it was mailed which was the last day provided by rule 31 (a) for it to be filed with the clerk.

The period fixed by this rule is jurisdictional and the appellate court has no power to relieve a defendant from his default in the event he files the notice beyond the period specified. (*People* v. *Riser,* 47 Cal.2d 594 [305 P.2d 18] ; *People* v. *Howard,* 166 Cal.App.2d 638, 641 [334 P.2d 105].)

However, it has been held where an appellant is confined in a state prison that even though the notice reaches the clerk's office after the 10-day period, the filing is in time if (1) the appellant places the notice of appeal in the hands of the proper prison officials within such time that it can be mailed to the clerk's office and reach that office before the 10-day period has elapsed (*People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868] ; *People* v. *Frye,* 117 Cal.App.2d 101 [255 P.2d 105] ; *People* v. *Rascon,* 128 Cal.App.2d 118 [274 P.2d 899] ; *People* v. *Aresen,* 91 Cal.App.2d 26 [204 P.2d 389] ; *People* v. *Tenney,* 162 Cal.App.2d 458 [328 P.2d 254]) ; or (2) the appellant is lulled by a prison official into a sense of security as to the date upon which the notice should be filed, such date being,

however, beyond the 10-day period (*People* v. *Head* (1956), 46 Cal.2d 886 [299 P.2d 872] ; *People* v. *Calloway,* 127 Cal. App.2d 504 [274 P.2d 497] ) ; or (3) where the appellant requested, within time, permission of the prison officials to forward his notice but due to the prison procedure was unable to sign the notice until after the 10 days had passed (*People* v. *Frye, supra,* 117 Cal.App.2d 101, 102).

The theory upon which the above cases hold that under the circumstances in them set forth the prisoners' notices were considered filed in time is, as expressed in *People* v. *Slobodion, supra,* 30 Cal.2d at page 368, that there was ''a constructive filing within the prescribed time limit''; in other words, that the presentation of the notice, or the offer to present it, to the proper prison authority, constituted a constructive filing in the county clerk's office.

■ We can see no good reason why such theory should not apply to the presentation to the prison authority of a notice of appeal at any time within the 10-day period. Otherwise, the actual time within which a person who is confined in prison may *act* is reduced beyond the time in which a person who is not so confined may act. Thus a person on bail has until 5 o'clock of the tenth day to act to file his notice or have someone file for him. The person in prison has no such time. He must act to file his notice with the prison authorities at the very least on the ninth day and in most instances on the eighth day as from some of the prisons it will take two days for the mail to reach many of the county clerks' offices in this state. Thus, a person in prison, by reason of his imprisonment, loses from one to two days of the time allowed him to act. He has no direct access, as has the nonprisoner, to the proper county clerk's office. The situation is that the state by law having imposed the conditions governing the taking of an appeal, the prisoner, by reason of his incarceration by the state, must cut down the time in which to act granted by the state from one to two days. In order to give him the same rights and the same justice as a nonprisoner it is necessary and right that it be held that a filing with the prison authorities at any time within the 10 days is a constructive filing at that time in the office of the proper county clerk. This is the first case to flatly consider the question of the filing with the prison authorities of the notice on the tenth day allowed for appeal. In the cases above cited there was an element of fault upon the part of the prison authorities, which element is absent

here; nevertheless we see no reason why the fundamental reasoning of those cases should not apply here, namely, that by state action (proper though that action is) the prisoner has been circumscribed in his ability to get his appeal filed in proper time at the county clerk's office. In *People* v. *Graff*, 104 Cal.App.2d 32 [230 P.2d 654], the court apparently had in mind the principle we are adopting here, for, in spite of the fact that no showing that the notice of appeal was presented to the prison personnel within the 10 days and the notice did not arrive at the county clerk's office until the twelfth day, the court considered the appeal to have been taken in time. The court said that the appellant stated in his brief that he "prepared and signed" the notice of appeal on the eighth day. "He does not say that he mailed or caused the notice of appeal to be mailed, *or gave it to anyone for that purpose.*" (P. 34; emphasis added.) Yet the court said "the facts in this case come close enough to the exception to the rule stated in *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], that this court is of the opinion it would be better to consider and pass upon the contentions made by defendant." (P. 34.) In *People* v. *Stinchcomb* (1949), 92 Cal.App.2d 741 [208 P.2d 396], an order denying the prisoner's petition for writ of error *coram nobis* was entered October 11. His notice of appeal therefrom was filed October 25 (four days late). The prisoner, according to his statement, did not receive notice of the denial until October 20 "whereupon he immediately mailed his notice of appeal . . ." No detail is given as to when he delivered the notice to the prison for mailing. In view of the fact that it was not received by the county clerk until October 25, it very well could have been given to the authorities on October 21, the tenth day, or even later. The court seemed to assume that there may have been some delay of the prison authorities in the matter and held that the rule of the Slobodion case applied. It is evident that the court considered that because of his confinement, consideration should be given to the fact that the prisoner did not receive notice of the trial court's action until the ninth day of the time for appeal, even though the time for appeal runs from the making of the order and not from the receipt of notice. Thus, in effect, the court was applying the rule we are adopting. It is rather interesting that after the reviewing court denied Stinchcomb's appeal on the merits he filed a petition for a rehearing, *People* v. *Stinchcomb* (1951), 102 Cal.App.2d

626, 627 [228 P.2d 69], after the time for filing provided by rule 27 (b), Rules on Appeal. The court, upon the theory of the Slobodion case, refused to dismiss his petition, because he represented that certain officers at the prison where he was confined "resorted to 'legal obstruction of conniving to deny petitioner the rights to submit legal actions to the courts within the period of time required and prescribed by law ...'"
A somewhat similar situation to that in the first Stinchcomb case is found in *People* v. *Olgin,* 137 Cal.App.2d 289 [290 P.2d 77]. There the notice of order denying the prisoner's petition for writ of error *coram nobis* did not arrive at the prison until the last day for filing notice of appeal, and was not received by the prisoner until nine days after the 10-day period to appeal had expired. The court held that a notice of appeal mailed that day was within time "within the sphere of the philosophy—both legal and moral—enunciated in the" Slobodion case.

*People* v. *Martiz* (1955), 130 Cal.App.2d 602 [279 P.2d 568], is not opposed to our ruling. There the prisoner, whose notice of appeal did not reach the county clerk's office until 71 days after judgment of conviction entered, claimed that he had "deposited [the notice of appeal] in the place designated for picking up mail" provided by the county jail wherein he was confined "within the required 10 days." (P. 604.) While there is discussion in the opinion that some fault must be shown upon the part of the jail officials in order to obtain relief under the Slobodion case, it is obvious from the opinion that the court decided the case upon its disbelief of the prisoner's statements. In *People* v. *Cato* (1956), 136 Cal.App.2d 503 [289 P.2d 119], the judgment of conviction was entered December 19, 1951. No notice of appeal was filed. In 1953 a petition to the United States Supreme Court for writ of certiorari was denied, without prejudice; "under the facts alleged to prosecute an appeal in the California State Courts in accordance with principles announced" in the Slobodion case. The defendant then filed in the Supreme Court an application for permission to appeal from the judgment of conviction, which was denied. The reviewing court held that the explanation by the defendant of the reasons for his not having filed a notice of appeal did not bring the case within the Slobodion rule. There was no similarity to the facts in our case. While the opinion dealt with the necessity of fault upon the part of the officials as requisite to the

granting of relief, such statement was not necessary to the conclusion reached by the court which was based primarily upon the failure of the defendant to act at all within the 10-day appeal period.

In *People* v. *Riser, supra,* 47 Cal.2d 594, the court reiterated the requirement that in order for a late filing to be excused there must be some delay caused by the state. However, such statement must be considered in relation to the facts of that case. There, the notice of appeal was not filed until some 36 days after judgment of conviction, and there was no reasonable justification shown for the delay. It was not a situation in which, as here, the prisoner actually presented his notice of appeal to the prison officials within the 10-day period.

Although the courts continue to hold the 10-day period for appeal as jurisdictional, they have, in order to do justice to prisoners who desire to appeal and who are circumscribed by their confinement, worked out ways of actually indirectly extending the time. As a result the appellate courts have been considerably involved in determining in each case the factual situation in the filing by prisoners of notices of appeal and wherever possible of relieving their defaults. The interpretation which we have given to rule 31(a) will greatly simplify the situation. All that needs to be determined where the notice of appeal arrives late at the county clerk's office is the very simple question of when was it handed by the prisoner to the proper prison official. We hold that delivery by defendant of his notice of appeal to the prison authorities on the tenth day was a constructive filing in the county clerk's office as of that day. We will therefore consider the sole question raised on the merits.*

2. *Sanity Hearing.*

Section 1368, Penal Code, provides: "If at any time during the pendency of an action and prior to judgment *a doubt arises* as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial. . . ." (Emphasis added.)

█ It is well settled that the "doubt" mentioned in the section is one that must arise in the mind of the trial judge rather than in the mind of counsel for the defendant or in that of any third person. (*People* v. *Perry,* 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123]; *People* v. *Aparicio,* 38

---

*Defendant does not question the sufficiency of the evidence to support the conviction.

Cal.2d 565, 568 [241 P.2d 221]; *People* v. *Jensen,* 43 Cal.2d
572, 576 [275 P.2d 25]; *In re Dennis,* 51 Cal.2d 666, 670 [335
P.2d 657].) ■ The determination of a motion for a hearing
upon the issue of defendant's sanity at the time of trial is
one which rests within the sound discretion of the court.
(*People* v. *Lindley,* 26 Cal.2d 780, 789 [161 P.2d 227]; *People*
v. *Aparicio, supra,* 38 Cal.2d 565; *People* v. *Gomez,* 41 Cal.2d
150, 159 [258 P.2d 825]; *People* v. *Jensen, supra,* 43 Cal.2d
572.) ■ The sanity contemplated by section 1368 is tested
by appraising the present ability of the defendant to so under-
stand the nature and purpose of the proceedings taken against
him as to be able to conduct his own defense in a rational
manner. (*People* v. *Aparicio, supra,* 38 Cal.2d 565; *In re
Dennis, supra,* 51 Cal.2d 666.)

■ On May 22, 1958, at a trial pursuant to section 1368,
defendant was found sane. Thereafter and on July 28 the
case came on for trial. Defendant's counsel then moved for
another trial of sanity under section 1368, stating that he
was unable to get a "coherent statement as to the offense"
from defendant, and that in counsel's opinion defendant was
unable to cooperate with him. Basing its ruling on the "re-
port of the doctors as made" at the previous sanity trial
and the fact that no additional evidence was offered, the court
denied the motion. We see no abuse of discretion. No offer
was made to show a change in the condition of defendant in
the less than three months that had elapsed since the report
was made. Additionally the judge was able to observe the
defendant at the arraignment on July 1, plea on July 3,
and on the day of the trial. ■ "A strong showing is re-
quired before an abuse of discretion is deemed to result from
the failure of the trial court to order a determination of
present sanity." (*In re Dennis, supra,* 51 Cal.2d 666, 670.)
No such showing was made.

■ Defendant contends that the mere suggestion by a
defense counsel that there is a doubt as to sanity of a de-
fendant requires a trial under section 1368. He admits that
the rule is that the doubt must be that of the judge, but
urges that the rule be changed to that contended by him. (See
*People* v. *Jensen, supra,* 43 Cal.2d 572, 576, and *People* v.
*Lindley, supra,* 26 Cal.2d 780, 789, holding that "doubt" in
the mind of counsel is not sufficient.) While, of course, the
statement of counsel is to be given serious consideration,
there is no good reason why it should control over other
circumstances which the court may take into consideration,

such as the doctor's report in this case, observation of the defendant, etc. Defendant's action at the trial supports the court's ruling. There appeared to be no lack of cooperation with his counsel, nor lack of understanding of the proceedings. He recalled the events of the crime and clearly stated them on the witness stand. ". . . the trial court observed him in court and on the witness stand and was, apparently, of the opinion that there was no doubt as to his present sanity." (*People* v. *Craig*, 49 Cal.2d 313, 321 [316 P.2d 947].)

The judgment is affirmed.

Tobriner, J., and Foley, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 30, 1959.

_____

*Assigned by Chairman of Judicial Council.